**JOHN D. SULLIVAN**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**James F. Battin U.S. Courthouse**
**2601 Second Ave. North, Suite 3200**
**Billings, MT 59101**
**Phone: (406) 657-6101**
**FAX: (406) 657-6989**
**Email: John.Sullivan2@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 17-15-BLG-SPW** |
| **Plaintiff,** | |
| **vs.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **MICHAEL DAVID LANGE,** | |
| **Defendant.** | |

The United States, represented by Assistant U.S. Attorney John D. Sullivan, files the following memorandum in anticipation of the sentencing hearing set in this case on January 18, 2018.

### INTRODUCTION

Michael David Lange pleaded guilty to conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. § 846, and

possession with intent to distribute methamphetamine, in violation of 21 U.S.C.

§ 841(a)(1) on September 12, 2017.  The Presentence Investigation Report ("PSR")

prepared by the United States Probation Office has Lange's advisory guideline

range calculated at 292 to 365 months of imprisonment based on a total offense

level of 38 and a criminal history category III.  The United States has no objection

to the PSR and respectfully requests that the Court impose a sentence of 336

months of imprisonment to be followed by five years of supervised release.

## ARGUMENT

### A.    Lange's Objections

Lange has raised two objections to the calculation of the advisory guideline

range.  The government agrees with the PSR as written, however, and urges the

Court to overrule both of his objections.

### 1.    The base offense level is accurately scored at 38 in the PSR.

Lange has objected to the base offense level, saying that it should be a 36

based on an estimate of seven pounds of methamphetamine.  His own statements to

investigators in January 2017, however, contradict his arguments and place that

number much higher and in line with the quantity attributed to him by the PSR

writer.

On January 2, 2017, Lange waived his *Miranda* rights and submitted to a

voluntary interview with his counsel.  During the course of the interview, Lange

discussed how drugs, including methamphetamine and cocaine, were driven to Billings from California on eight different occasions.  The first two trips were each for one pound of methamphetamine, which a male individual had driven to the Billings Heights Inn where Lange picked it up and delivered it to Sherry Murphy (CR 17-07-BLG-SPW).  He was able to describe the male courier's first name, appearance, age, and vehicle.  The third trip was for two pounds of methamphetamine that M.V. drove up.  The fourth trip was made by co-defendant Jose Soltero and M.V. for two pounds of methamphetamine.  Trips five through eight were all made by Soltero and ranged from between three to four pounds of methamphetamine each time.  Lange believed he had personally sold three pounds of the total and the remaining 17 pounds of meth went to Murphy for redistribution.

Lange, Soltero, and Murphy all pleaded guilty to conspiracy offenses, and the latter two defendants have or had base offense levels of 38 for their involvement.  If Lange was aware in January 2017, prior to his indictment, of the specific quantities of methamphetamine obtained by Soltero, Murphy, and others during the conspiracy, those amounts were reasonably foreseeable to him at a minimum.  But much more likely, he was so well aware of those amounts because he was the player centrally responsible for the transportation and distribution of those quantities of methamphetamine into the Billings community.  His statements

3

to investigators—corroborated by the other participants in the conspiracy, including Soltero and Murphy—render any arguments that he should be responsible for a lesser quantity specious.

### 2.   Lange was a manager or supervisor of the conspiracy under U.S.S.G. § 3B1.1(b).

Under U.S.S.G. § 3B1.1(b), a defendant's offense level increases by three levels if he "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive . . . ."  The commentary states that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."  U.S.S.G. § 3B1.1 cmt. n. 2.  The Court considers "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."  *Id.* at cmt. n. 4.

Lange argues that Soltero was the manager or supervisor of this conspiracy and that he never directed anyone's involvement.  Again, his statements to investigators prior to indictment undermine his arguments here.  In addition, more than one person in a conspiracy can qualify for a role enhancement.  U.S.S.G. § 3B1.1 cmt. n. 4.  Lange admitted during his January 2, 2017 interview that

between July 22 and 24, 2016, that he flew to Hollywood with $12,000 in cash and had two individuals, C.V. and C.H., each carry $1,000 in twenty-dollar bills for him. Those two individuals, according to Lange, brought back three pounds of methamphetamine back from California that they obtained from Soltero.

During Murphy's debrief following her conviction, she stated that Lange approached her to sell methamphetamine for him on two separate occasions, the first being in August 2015. Although she declined his first overture, she accepted when he approached her in February or March 2016. Murphy went on to become and major player in the conspiracy and redistribute 17 pounds of methamphetamine according to Lange. He disputed during his January 2 interview that he recruited Murphy, however, and stated that Murphy came to him. In any event, Lange admitted that he gave Soltero's number to Murphy and they started communicating, but that the methamphetamine distributed from Soltero to Murphy was run through Lange.

In addition, M.M. met Lange through Murphy and Lange asked M.M. to work for him. M.M. explained that Lange instructed her to go to Wyoming in connection with the conspiracy, where she was ultimately arrested along with two other individuals with four ounces of methamphetamine. Both of those other individuals, A.B. and C.B., stated that Lange fronted them the four ounces of methamphetamine with which they were caught.

Lange's activities in this conspiracy are the type the Ninth Circuit has previously upheld as sufficient to warrant role enhancements. *See United States v. Ponce*, 51 F.3d 820 (9th Cir. 1995) (defendant managed two co-conspirators, oversaw the procurement and distribution of drugs, and repeatedly exercised decision-making authority). To qualify for a manager or supervisor enhancement under § 3B1.1(b), a defendant need only to have managed one other participant in the conspiracy, which Lange clearly did with at least C.V. and C.H. and likely several more including Murphy, M.M., and others. *United States v. Barnes*, 993 F.3d 680, 685 (9th Cir. 1993). In addition, he admitted selling large quantities to a number of individuals, including eight ounces to T.B., seven ounces to H.__, six ounces to K.C., four ounces to J.V., and one pound to C.V. Other individuals also received cocaine either on its own or in addition to methamphetamine. All of which makes the enhancement more appropriate. *See United States v. Egge*, 223 F.3d 1128, 1132 (9th Cir. 2000) (three-level enhancement was proper where defendant used others to help him sell drugs).

Lange denies that those people were distributing for him, but it belies common-sense to believe that every one of those individuals personally used the quarter-pound, half-pound, and pound quantities of methamphetamine they received from Lange. When arrested in Wyoming, A.B. and C.B. both stated that the four ounces of methamphetamine came from Lange on the front. And if every

customer purchased their supposed user-amounts of methamphetamine from Lange, there would be little reason to keep drug ledgers like the ones found in Lange's residence on October 11, 2016.  PSR ¶ 16.  Instead, it would make much more sense if he were keeping track of the individuals to whom he fronted methamphetamine.  That he was fronting methamphetamine gave Lange an increased dependence on the success of those individuals redistributing his methamphetamine and gives this Court an additional reason to impose the three-level enhancement under § 3B1.1(b).

Lange was the central player in this conspiracy who, along with Soltero, ensured the delivery of significant quantities of methamphetamine to Montana, redistributed 17 pounds, by his own admission, to Murphy, and distributed an additional three pounds to others on his own.  He recruited others into the conspiracy and exercised a level of control over them and the whole process, including the procurement of and payment for the methamphetamine.  The three-level enhancement for manager or supervisor is appropriate and his objection should be overruled.

## B.    Sentence Recommendation

Title 18 U.S.C. § 3553(a)(2) requires the Court to "impose a sentence sufficient, but not greater than necessary" to comply with the following purposes: (1) to reflect the seriousness of the offense; (2) to promote respect for the law; (3)

to provide just punishment; (4) to afford adequate deterrence to criminal conduct;
(5) to protect the public from further crimes of the defendant; and (6) to provide
the defendant with needed educational or vocational training, medical care, or
other correctional treatment in the most effective manner.

The Court is also required to consider the nature and circumstances of the
offense and the history and characteristics of the defendant, the kinds of sentences
available, the sentencing guidelines and policy statements, to avoid unwarranted
sentencing disparities, and to provide for restitution to victims.  18 U.S.C.
§ 3553(a)(1), (3)-(7).

In this case, Lange was the most culpable participant in a wide-ranging
conspiracy that poured, at minimum, nearly 20 pounds and possibly up to 50
pounds of methamphetamine into the Billings community.  His offenses are
remarkable not only for the quantity of methamphetamine, but also for the fact that
he lived a crime-free life until his early 50s.  It was not until 2014 at age 53 that
Lange committed three-scorable offenses during that calendar year.  First, was a
DUI in January 2014.  PSR ¶ 45.  Next was a hit-and-run in May.  PSR ¶ 46.
Finally, he committed another DUI in August in conjunction with a felony
possession of a controlled substance for sale, in which he had over an ounce of
methamphetamine along with a number of small baggies and a scale.  PSR ¶ 47.
For that offense, Lange was sentenced to 16 months of imprisonment in California.

*Id.*  He also has an outstanding warrant for carrying a concealed knife without a permit in Nevada, which was also alleged to have occurred in 2014.  PSR ¶ 51.

His incarceration in California for his meth-trafficking conviction did nothing to deter Lange and his involvement in this case began in the spring of 2016, closely on the heels of his release from imprisonment.  This time, however, Lange was dealing in quantities of methamphetamine magnitudes larger than in 2014.  Just when agents executed a search warrant on his residence in October 2016, he had over a kilogram of actual methamphetamine, 372 grams of cocaine, $27,400 in U.S. Currency, drug ledgers and paraphernalia, and fake urine.  PSR ¶ 16.

According to his own admissions, the conspiracy involved nearly 20 pounds of methamphetamine that was transported from California to Montana either by him or at his direction.  His co-conspirator, Murphy, said that the amount of methamphetamine was closer to 50 pounds.  Regardless, Lange was responsible for polluting the Billings community and surrounding areas with a significant quantity of highly pure methamphetamine.  As this Court knows, methamphetamine is one of the main common denominators in nearly all crimes prosecuted in the District of Montana, whether it be violent crime, sex assaults, firearm offenses, or fraud.  As a result, the negative impact associated with at least 20 pounds of methamphetamine is difficult to overstate.

Here, a sentence in the middle of the guidelines is sufficient but not greater than necessary.  Not only is it a very serious offense that presents a danger to the community, the need for just punishment, deterrence, and to get Lange needed drug and alcohol treatment all support a sentence of 336 months.  In addition, his 2014 conviction for felony meth-trafficking in California did little to deter him and his criminality increased significantly following his release from prison.  A substantial sentence is therefore necessary to promote in him respect for the law and to provide specific deterrence so that he is not a danger to the community upon his release.

For these reasons, the government believes a sentence of 336 months with 5 years of supervised release to follow is the appropriate sentence in this case.

DATED this 3rd day of January, 2018.

KURT G. ALME
United States Attorney

*/s/ John D. Sullivan*
JOHN D. SULLIVAN
Assistant U.S. Attorney